United States District Court
Southern District of Texas
FILED

DEC 3 1 2003

Michael N. Milby
Clerk of Court

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MIGUEL ANGEL AVINA FABELA | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. B-03-172 |
| A.G. WINFREY, INTERIM FIELD OFFICE DIRECTOR, | ) | |
| BUREAU OF IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, and | ) | |
| JOHN ASHCROFT, | ) | |
| UNITED STATES ATTORNEY GENERAL, | ) | |
| Respondents. | ) | |

## PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

COMES NOW the petitioner, Miguel Angel Aviña Fabela, ("Mr. Aviña"), by and through his attorney of record, Jodi Goodwin, and hereby submits this, his opposition to the Respondent's Motion to Dismiss his Petition for Writ of Habeas Corpus. The Department of Homeland Security, ("DHS"), first contends that affirmance without opinion was proper and did not violate due process. *See* Respondent's Motion to Dismiss at 3. The DHS also urges this Court to dismiss the petition because it fails to state a claim for which relief can be granted. Specifically, the DHS argues that the petitioner's deferred adjudication amounts to a conviction and further, that the conviction is for an aggravated felony which subjects him to automatic deportation with no opportunity for any individualized consideration.

1

Herein, Mr. Aviña will first address the substantive issues of removability as an aggravated felon, and the constitutional claims arising therefrom. Additionally, he urges this Court that the failure of the Board of Immigration Appeals, ("BIA"), to address due process concerns raised by the Immigration Judge, ("IJ"), was an abuse of the agency's discretion.

**ISSUE I(a):    Mr. Aviña's deferred adjudication for possession of a controlled substance is not an aggravated felony.**

The DHS cites statutory language and several decisions of federal courts of appeal in support of the proposition that the petitioner's 1999 deferred adjudication amounts to a conviction for an aggravated felony. See Respondent's Motion to Dismiss at 6-11. However, a single offense for simple possession of a controlled substance is not a drug trafficking offense, and therefore not an aggravated felony.

# I.
## DECISIONS OF THE BOARD OF IMMIGRATION APPEALS CONCERNING STATE CONVICTIONS FOR CONTROLLED SUBSTANCE OFFENSES

*Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990), contains one the earliest interpretations of the definition of aggravated felony for drug trafficking convictions. The BIA began by reviewing the history of the term "aggravated felony" in light of it's inclusion in the Anti-Drug Abuse Act of 1988 and resolved the issue of whether state crimes are included in the definition of "drug trafficking crime" found at INA §101(a)(43)(B) 20 I&N Dec. 171, 173. The BIA determined that the definition of "drug trafficking crime" in 18 U.S.C. § 924(c)(2) for purposes of determining a drug-related "aggravated felony" within the meaning of INA §101(a)(43)), depends on whether the phrase "punishable under" is properly read as limiting the definition to "convictions

2

under" the federal laws listed in 18 U.S.C. § 924(c)(2), or whether the definition is satisfied by proving a conviction that includes all the elements of an offense for which an alien "could be convicted and punished" under the cited federal laws. *Id.* at 175.

> We conclude that the definition of "drug trafficking crime" for purposes of determining drug-related "aggravated felonies" within the meaning of the Immigration and Nationality Act encompasses state convictions for crimes analogous to offenses under the Controlled Substances Act, the Controlled Substances Import and Export Act, or the Maritime Drug Law Enforcement Act.

*Id.* at 177.

*Matter of Davis,* 20 I&N Dec. 536 (BIA 1992), was another case in which the BIA addressed the applicability of the aggravated felony definition to a drug offense under state law. Additionally, the BIA provided a general definition of illicit trafficking in a controlled substance, (commonly defined as any unlawful trading or dealing) and ruled that a conviction for conspiracy to commit any felony punishable under the Controlled Substances Act is also a conviction for an aggravated felony. 20 I&N Dec. 536, 538. In addition, the opinion cautioned that varying definitions among states in defining and punishing controlled substance offenses could lead to inconsistent results in different jurisdictions for purposes of eligibility for relief. An individual convicted in one state may be eligible for relief, while another, convicted of an identical offense in another jurisdiction, would be ineligible for the same relief.

> Under this analysis identical drug offenses in two different states which are analogous to an offense under the Controlled Substances Act, but are treated by one state as a felony and by the second as a misdemeanor, would result in a finding of "drug trafficking crime" for the offense of the first state and not for the second. We do not find that this result is required by the language of 18 U.S.C. § 924(c)(2) or was intended by Congress in referring to that section.

3

*Id.* at 540.

Davis repeated and expanded upon the analysis set forth in *Matter of Barrett,* *supra,* emphasizing that an aggravated felony as defined at INA §101(a)(43)(B) must, of necessity, be punishable as a felony under federal law.

> ...(F)or a finding of "drug trafficking crime" the alien's offense must be a felony offense under one of the three statutes listed in 18 U.S.C. § 924(c)(2), or it must be analogous to a felony offense under one of the three statutes in section 924(c)(2). Thus, as noted above, where a state... conviction is a felony and involves unlawful "trafficking," as commonly defined,...a finding of aggravated felony is proper... However, if the offense is not designated as a felony it may nonetheless be "a drug trafficking crime"... if it is analogous to an offense punishable under one of the federal acts specified in 18 U.S.C. § 924(c)(2), and the offense to which it is analogous is a "felony" under federal law.
> Similarly, certain offenses which do not obviously meet the common definitions of "trafficking" might nonetheless be "drug trafficking crimes" within the meaning of 18 U.S.C. § 924 (c)(2) and therefore constitute "illicit trafficking" in controlled substances within the meaning of section 101(a)(43). To return to the example of possession, 21 U.S.C. § 844(a) indicates that certain possessory offenses are punishable by terms of imprisonment exceeding 1 year and thus are felonies. Consequently, any federal conviction under 21 U.S.C. § 844(a) which is a felony, or pursuant to Barrett any federal, state, and specified foreign conviction analogous to such a conviction, is a "drug trafficking crime" under 18 U.S.C. § 924(c)(2), "illicit trafficking" in a controlled substance within the meaning of section 101(a)(43) of the Act, and, therefore, an "aggravated felony."

*Id.* at 539. (footnote omitted)

In *Matter of L-G-,* 20 I&N Dec. 89 (BIA 1995), the BIA held that a single conviction under 21 U.S.C. § 844(a) for simple possession of more than 5 grams of a mixture or substance which contains cocaine base is a conviction for an aggravated felony because Congress designated more serious penalties for possession of cocaine base than for possession of powder cocaine 20 I&N 89, 91. "'Cocaine base,' ...means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a

4

lumpy, rocklike form." *Id, citing* U.S.S.G. § 2D1.1(c); Congressional hearing statements indicate that Congress targeted cocaine base because it "(1) has a more rapid onset of action, (2) is more potent, (3) is more highly addictive, (4) is less expensive than cocaine powder, and (5) has widespread availability." *Ibid, citing United States v. Thurmond*, 7 F.3d 947, 952-53 (10th Cir. 1993) (citing statements from congressional hearings). Because the respondent in *L-G-* was convicted of possession of powder cocaine and not crack, the BIA found that he had not been convicted of an aggravated felony. *Id.* at 90.

In *In re K-V-D-* 22 I&N Dec. 1163, (BIA 1999), the respondent pled guilty to simple possession of cocaine in Texas and was given deferred adjudication, yet ultimately was convicted of a felony. 22 I&N Dec. 1163, 1168. The BIA concluded that he was not removable as an aggravated felon because his state drug crime was not analogous to a felony under federal law, and noted that the Fifth Circuit had previously found that a conviction for simple possession under state law may be considered an aggravated felony for sentencing enhancement purposes. *Id* at 9, *citing United States v. Hinojosa López*, 130 F.3d 691 (5th Cir. 1997).

The BIA emphasized the necessity for a uniform system of interpreting the definition of aggravated felony for purposes of relief from removal, and distinguished decisions of Federal Courts of Appeal which interpret the definition of aggravated felony in light of the United States Sentencing Guidelines from it's own decisions determining removability and eligibility for relief. *Id.* at 16. The opinion noted that the Second Circuit had already done so, in *United States v. Pornes García*, 171 F.3d 142 (2d. Cir 1999). "The Second Circuit's differentiation between the sentence enhancement and

immigration contexts provides support for our existing interpretation of the statutory language regarding what constitutes a "drug trafficking crime" that is punishable as a felony for immigration purposes." *Id.* at 15.

> The application of (INA §101(a)(43)(B)) in the context of criminal sentence enhancement achieves a far different enforcement result from that achieved by application of this section of the statute in the immigration context. In the context of federal sentence enhancement, related to a conviction for reentry after a prior removal, what is being penalized criminally is recidivism. (internal citation omitted) Any prior conviction is relevant for purposes of enhancement. By contrast, in the immigration context, what is being sanctioned civilly is an existing violation of federal immigration law. A uniform application of federal sanctions related to a particular criminal conviction is paramount in this context.

22 I&N Dec. 1163, 1176-77. *See also Matter of L-G-, supra* at 98.

## II.
### *USA v. Hernández-Avalos.*

Hernández-Avalos was convicted of possession of heroin in Colorado in 1999. *See United States v. Hernández Avalos,* 251 F.3d 505, 506, (5th Cir. 2001). The Immigration and Naturalization Service, ("INS"), alleged that he had been convicted of an aggravated felony, and instituted expedited removal proceedings. *Id.* Hernández-Avalos waived his right to a hearing, stipulated to the allegation that his conviction was for an aggravated felony, and waived appeal. He was subsequently removed to Mexico. He was arrested by INS agents upon his return, and indicted for unlawfully re-entering the United States after removal. *See* Title 8, United States Code, §1326. Because Hernández Avalos was considered an aggravated felon, the government sought enhanced penalties under §1326(b). Hernández–Avalos moved to dismiss the charge, arguing that the removal proceeding was fundamentally unfair and that his conviction in Colorado for possession of heroin was not an aggravated felony because it was not punishable as a

6

felony under federal law. Hernández-Avalos was convicted, and argued on appeal that he should not have been subject to the sentencing enhancement because he had never been convicted of an aggravated felony and further, that the proceeding utilized to secure his removal resulted in a denial of his right to due process. In it's opinion, the Fifth Circuit was not deciding whether a person who has been convicted of possession of a controlled substance has been convicted of a drug trafficking offense, and therefore, an aggravated felony:

> The sole issue before this court is whether Hernández's instant conviction for illegal reentry must be vacated because of flaws in the earlier removal proceeding…Our analysis begins and ends with the question whether the removal proceeding was fundamentally unfair in the sense that it resulted in a "denial of justice" or of due process of law.

*Id.* at 507, (internal citation omitted).

The Fifth Circuit upheld the conviction, finding that the procedure under which Hernández-Avalos removal was expedited was not fundamentally unfair, despite the fact that the INS had not followed precedents of the Board of Immigration Appeals ("BIA") in interpreting the definition of "aggravated felony." The Fifth Circuit cited the definition of "drug trafficking crime" at INA §101(a)(43)(B), which refers to 18 USC §924(c), and found that Hernández-Avalos had been convicted of an aggravated felony first because possession of heroin is punishable under the Controlled Substances Act, and also because it is a felony in Colorado. *251 F.3d 506-507.*

In responding to legal arguments advanced by Hernández-Avalos regarding the definition of "drug-trafficking crime" and "aggravated felony," employed by the BIA, the Fifth Circuit noted:

"If the INS officials had properly applied BIA precedent at the time they removed Hernandez, see 8 C.F.R. § 3.1(g), they would have determined that Hernandez's Colorado drug conviction for simple possession of a small amount of heroin would not have been considered a felony under analogous provisions of the Controlled Substances Act, see 21 U.S.C. § 844(a), and they would not have subjected him to the expedited administrative removal proceedings.

*251 F.3d 505, 508.*

The Fifth Circuit stated it's disagreement with the BIA regarding the interpretation of aggravated felony and concluded: "We see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernández as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law." *Id.* "Under these circumstances, we hold that the earlier removal proceeding was not "fundamentally unfair" and that the indictment for unlawful reentry should not be dismissed as a violation of due process of law." *Id.* at 509.

Despite the dicta in *Hernández Avalos* concerning the definition of aggravated felony, this Court should find that Mr. Badillo's deferred adjudication for possession of marijuana is not an aggravated felony for purposes of removal proceedings under INA §240. The BIA stated, also in dicta, that such an offense may be considered an aggravated felony. *Matter of Barrett, supra, Matter of Davis, supra; Matter of L-G- supra.* Yet in spite of that language, in the most recent BIA decision regarding the definition of aggravated felony and it's applicability to controlled substance convictions, the BIA held that the definition of drug trafficking does not encompass an offense related to a controlled substance for which the respondent could not have been convicted for a felony under federal law. *In re K-V-D- supra.* That opinion emphasized the over-arching need

8

for the consistent interpretation of the definition of aggravated felony in removal proceedings nationwide. *Id* at 15.

In *Hernández Avalos*, the 5th Circuit dismissed the distinction between interpreting the statute for purposes of sentencing enhancement and purposes of determining removability drawn by the BIA in *K-V-D*. "We fail to see the validity of interpreting this statute differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance." The Fifth Circuit suggested that the BIA's analysis creates a problem as it attempts to solve one: the need for uniformity in statutory interpretation:

> ...(T)he BIA and Second Circuit decisions are predicated less on their reading of the statutory language than on the perceived need for a uniform, substantive standard – at least in the deportation context -- for determining whether a drug offense qualifies as an "aggravated felony." But this argument for uniformity is not altogether persuasive inasmuch as it creates a dichotomy -- not uniformity -- between the BIA's application of section 924(c) in removal proceedings and the federal courts' application of section 924(c) in sentencing proceedings, even though both proceedings serve a parallel purpose of imposing greater consequences for serious drug offenses.

*251 F.3d 505, 509.*

In the view of the Fifth Circuit, Congress has already spoken directly to the issue of whether or not a drug conviction under state law, not punishable as a felony under the Controlled Substances Act, is an aggravated felony:

> ...(T)he plain language of the statutes "indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the [Controlled Substances Act]," *United States v. Briones-Mata*, 116 F.3d at 308, 310, (8th Cir. 1997) and that the lack of a uniform substantive test for determining which drug offenses qualify as "aggravated felonies" "is the consequence of a deliberate policy choice by Congress" that the BIA and the courts cannot disregard.

*251 F.3d 505, 509, citing United States v. Restrepo-Aguilar*, 74 F.3d 361, 366, (1st Cir. 1996).

The actual issue the Court was called to decide concerned the meaning of the same phrase for purposes of sentencing enhancement. By it's comment on the applicability of the aggravated felony definition for the purpose of determining removability, the Fifth Circuit was examining the BIA's interpretation of the INA, legislation which the BIA was specifically designated to administer by Congress. The respondent respectfully submits that if the actual words of the statute manifested the crystalline intent of Congress, then every Circuit Court which has undertaken to parse the aggravated felony provisions would be in agreement. Precisely because Congress did not directly articulate it's intent to treat every non-citizen convicted of an offense related to a controlled substance as an aggravated felon, the BIA and Circuit Courts have studied the statutory language in order to apprehend its genuine legislative objective.

"In all cases involving statutory construction, the starting point must be the language employed by Congress, and it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used." *INS v. Cardoza-Fonseca*, 480 U.S 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). The United States Supreme Court has provided specific instruction to Courts who are tempted to disturb the exposition of a statute by an agency to which the legislative branch has assigned such interpretation.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

10

*Chevron U.S.A. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 833-844, (1984).

The varying determinations by numerous courts as to the applicability of the aggravated felony definition for state convictions not punishable as felonies under any federal statute manifests that Congress has not spoken directly. *United States v. Restrepo-Aguilar, United States v. Polanco,* 29 F.3d 35, 38 (2d Cir. 1994); *Aguirre v. INS,* 79 F.3d 315 (2d. Cir 1995), (different interpretations of aggravated felony provision are appropriate in each context); *United States v. Hinojosa-Lopez , supra; United States v. Briones-Mata,* 116 F.3d 308, 309 (8th Cir. 1997), (state drug conviction is a drug trafficking crime if punishable as a felony under state law); *United States v. García Olmedo,* 112 F.3d 399, (9th Cir. 1997); *United States v. Arellano Torres,* 303 F.3d 1173 (9th Cir. 2002); *United States v. Cabrera-Sosa,* 81 F.3d 998, 1000 (10th Cir. 1996); *United States v. Simon,* 168 F.3d 1271, 1272 (11th Cir. 1999); *see also Steele v. Blackman,* 236 F.3d 130, 136 & n.5 (3d Cir.2001)(dicta).

### III.

Because of the indeterminate language employed by Congress, eight circuit courts of appeal have addressed the issue for purposes of the U.S.S.G., yet only the Second Circuit has spoken directly to the precise issue presented here. Because the BIA is the agency charged by the drafters of the statute to oversee the execution of it's provisions, precedent decisions of the BIA should be controlling when INA §101(a)(43)(B) is analyzed for purposes of determining removability.

If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the

statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

> "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz, 415 U.S. 199, 231* (1974). ... Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Chevron* 467 U.S. at 845.

The BIA has reasonably and consistently interpreted the statutory provisions found at INA §101(a)(43)(B) for purposes of determining deportability/removability. *Matter of Davis, supra, Matter of Barrett, supra; Matter of L-G-, supra; In re K-V-D-, supra.* The United States Supreme Court entrusts the decisive explication of the contested language to the designated agency. *Chevron, supra.*

The dicta by the Fifth Circuit in *Hernández Avalos* should not call the BIA decisions into question unless they are randomly inconsistent and in apparent antithesis to any logical aim of Congress. The BIA has consistently held that a controlled substance offense punished by a state is a drug trafficking offense for purposes of determining removability if it is punishable as a felony under federal law. Drug trafficking offenses, described in ordinary terms as those involving illegal trading or dealing, are felonies under federal law. A conviction under the laws of a particular state which, if punishable under federal law would only be a misdemeanor, is not recognized as an offense involving trafficking. Therefore, unless a state offense is analogous to a felony under federal law, the offense does not involve trafficking and is therefore not an aggravated felony. *Matter of Davis,* 20 I&N 536, 538. According to the United States Supreme

12

Court, the considered construction of the words used by Congress by the agency charged with resolving vagueness or ambiguity in their execution remains in full force and effect, in spite of any dicta in decisions by circuit courts of appeals.

**ISSUE I(b): Application of the BIA decision in *In re Salazar Regino, supra*, violates equal protection.**

BIA decisions concerning the applicability of the aggravated felony definition have highlighted the necessity for uniformity in statutory interpretation. Specifically, the BIA decisions in *In re Salazar Regino, supra, In re Yañez Garcia,* 23 I&N Dec. 390, (BIA 2002); *In re Santos López,* 23 I&N Dec. 419 (BIA 2002), and *In re Elgendi* 23 I&N Dec. 515 (BIA 2002), illustrate inconsistencies which result in a gross inequity for similarly situated LPR's. These incongruous ends stem from differences among the jurisdictions of particular federal circuit courts of appeals, and this Board's decision to adopt their rulings concerning aggravated felonies in sentencing guideline cases for purposes of removal proceedings.

For example, the respondent in *Salazar Regino,* 23 I&N Dec. 223, (BIA 2002), pled guilty to possession of marijuana. Prior to finding that deferred adjudication for possession of marijuana is a conviction for an aggravated felony, the BIA stated:

> Although the Fifth Circuit held that this offense is an aggravated felony for federal sentencing purposes in *United States v. Hinojosa-Lopez, supra,* we declined to apply that decision in the immigration context in *Matter of K-V-D-, supra.* However, the Fifth Circuit recently concluded that our interpretation was "plainly incorrect" in *United States v. Hernandez-Avalos, supra,* at 509. The court stated that it found no validity to giving different interpretations to the definition of a drug trafficking crime in 18 U.S.C. § 924(c) based on a distinction between sentencing and immigration cases. It therefore applied the holding in *United States v. Hinojosa-Lopez* to the alien in that case and found him to be an aggravated felon. We are bound to apply the law of the circuit in cases arising in that circuit. *See Matter of K-S-,* 20 I&N Dec. 715 (BIA 1993); *Matter of Anselmo,* 20 I&N Dec. 25 (BIA 1989). Because this case is in the

13

Fifth Circuit, we find that the offense to which the respondent pled guilty is an aggravated felony. *United States v. Hernandez-Avalos, supra*; *United States v. Hinojosa-Lopez, supra*; *see also Matter of Olivares*, 23 I&N Dec. 148 (BIA 2001). *But see Matter of K-V-D-, supra*; *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *Matter of L-G-*, 20 I&N Dec. 905 (BIA 1994).

23 I&N Dec. 223, 228.

In *In re Yañez García*, 23 I&N Dec. 390 (BIA 2002), the BIA abandoned its' analytical analysis entirely. After the rejection by the Fifth Circuit of the analytical method employed in *Matter of K-V-D-, supra*, this Board declared, "[U]niformity is presently unattainable in this context. 23 I&N Dec. 390, 396 (BIA 2002). In *Yañez-García, supra*, the respondent had twice been convicted of possession of cocaine. Prior to announcing this Board's new policy of interpreting the meaning of "drug trafficking crime" according to the majority of the federal circuit courts which have considered the issue, this Board surrendered it's soundly based method of statutory analysis. "We conclude that the best approach is one of deference to applicable circuit authority." 23 I&N Dec. 390, 396 (BIA 2002).

In *Salazar Regino, supra*, the BIA found that a non-citizen who has been granted deferred adjudication for simple possession of a controlled substance and whose case arises within the 5th Circuit has been convicted of an aggravated felony and is ineligible for relief from removal. In the 2nd, 3rd, 4th, 6th, and 7th circuits, a similarly situated non-citizen may eligible for discretionary relief. *Yañez García, supra*

Possession of more than 60 grams of marijuana in Montana is a felony. *See* Montana Code Annotated § 45-9-102. Simple possession of any amount of marijuana is a misdemeanor in California. *See* California Penal Code §1000. In *USA v. Arellano Torres, supra*, the 9th Circuit reviewed whether the petitioner's prior conviction for

14

possessing a controlled substance qualified as an aggravated felony for purposes of the

U.S.S.G.

> Possession of a controlled substance, however, may satisfy the second prong of the aggravated felony definition if it is "punishable by more than one year's imprisonment under applicable *state* . . . law." *Id.* (emphasis added); *see also United States v. Ibarra-Galindo*, 206 F.3d 1337, 1339-40 (9th Cir. 2000) (holding that crime that constitutes misdemeanor under federal law may nonetheless be considered aggravated felony if it qualifies as felony under state law), *cert. denied*, 531 U.S. 1102 (2001), *overruled in part by Corona-Sanchez*, 291 F.3d at 1210. That is the case here: under Nevada law, possession of a controlled substance is a category E felony, NRS 453.336(2), which Nevada defines as "a felony for which a court shall sentence a convicted person to imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 4 years." NRS 193.130.[6]

*Arellano Torres, supra* at 1177.

According to the ruling of the BIA in *Salazar Regino, supra,* and *Yañez García, supra,* a non-citizen who has a sole conviction for simple possession of a controlled substance is an aggravated felon if federal law of the relevant jurisdiction so declares. An LPR convicted of felony possession of marijuana in Montana is an aggravated felon, according to the ruling of the 9th Circuit in *Arellano Torres, supra.* However, given the previous ruling of the 9th Circuit in *Lujan Armendariz v. INS and Roldan Santoyo v. INS,* 222 F. 3d 728 (9th Cir. 2000) the same would not even be removable because he or she may rely on the ameliorative provisions at 18 USC §3607 to avoid a finding of removability. This anamolous and unpredictable outcome is the progeny of the policy presently employed by this Board in construing the definition of aggravated felony through the lens of federal circuit court rulings in cases involving the USSG.

The BIA stated, in *Yanez García,* "[I]n immigration cases arising within circuits that have not yet had occasion to consider this question, we will apply the standards

adopted by the majority of the circuit courts." 23 I&N Dec. 390, 391. Neither the 4th Circuit nor the 6th Circuit have decided whether a state offense which is a felony may be also be an aggravated felony drug trafficking crime for purposes of relief in removal proceedings, and the BIA will adopt the standard applied by the majority of the courts which have spoken to the question. In North Carolina, possession of more than 1.5 ounces of marijuana is a felony. In Maryland, simple possession of any amount of marijuana is a misdemeanor. *See* Maryland Code Annotated, Crimes and Punishments, §287. Maryland and North Carolina are both located in the Fourth Circuit, and the Fourth Circuit has yet to rule on this question. However, were the BIA called upon to decide whether an LPR convicted of possessing 2 ounces of marijuana in North Carolina has been convicted of an aggravated felony, the Board would find that LPR ineligible for any relief from removal, given its' rulings in *Salazar Regino, supra*, and *Yanez García, supra*. However, a similarly situated LPR who resides in Maryland could have been convicted of possessing 4 ounces of marijuana , (a misdemeanor under Maryland law) and be permitted to apply for cancellation of removal.  *See In re Santos López, supra*, and *In re Elgendi, supra*.


When applied to a non-citizen whose removal proceedings arise within the 5th Circuit, a gross inequity results which stems from the application of *dicta* from the 5th Circuit's decision in *Hernández Avalos, supra*, a case which analyzed the USSG. That USSG decision found that a single conviction for an offense relating to a controlled substance is an aggravated felony, thus foreclosing any relief to such a respondent. Counting the conviction as an aggravated felony which renders the respondent unable to

apply for discretionary relief places any non-citizen who has been arrested for a controlled substance offense in the 5th Circuit in an unfairly precarious position. The LPR cannot depend on any provision of immigration law to remain in the United States.

While the decisions in *In re Santos López,* 23 I&N Dec. 419 (BIA 2002), and *In re Elgendi,* 23 I&N Dec. 515, (BIA 2002), were both favorable to the LPR's, they are emblematic of the problems inherent in the Board's relinquishment of its' role in disentangling the definition of aggravated felony for purposes of removal proceedings from its' application to sentencing enhancements under the USSG. The respondents in each case were convicted of misdemeanor possession offenses. The Board announced its' decision to defer to federal courts concerning the definition of a type of offense Congress has explicitly indicated the Board should clarify in *Yanez Garcia, supra. Santos Lopez* and *Elgendi* manifest that lack of a uniform standard for interpreting the definition of aggravated felony creates an emphatically discernible violation of due process. While the Board notes in *Elgendi* that the 1st, 2nd, 3rd 5th, 9th, 10th, and 11th circuits have interpreted 8 USC §1101(a)(43), the 7th Circuit has yet to speak to the aggravated felony definition. Under Indiana law, possession of more than 30 grams of marijuana is a felony. In Wisconsin, simple possession of marijuana is always a misdemeanor offense. *See* Wisconsin Statutes Annotated §59.54(2). If this Court utilizes the reasoning employed in *United States v. Hernandez- Avalos, supra, United States v. Simon, supra*; *United States v. Briones- Mata, supra*; *United States v. Cabrera-Sosa, supra*; *United States v. Restrepo-Aguilar, supra, and United States v. Arellano-Torres, supra,* an LPR convicted in Indiana for less than two ounces of marijuana is an aggravated felon while another LPR convicted

17

in Wisconsin after possessing two pounds of marijuana may seek relief. Those unbalanced outcomes generate from the BIA's decision, announced in *Salazar Regino, supra,* and *Yanez Garcia, supra,* and visible in *Santos Lopez, supra,* and *Elgendi, supra,* to relinquish its' role as the agency charged with administering the immigration laws.

A state offense analogous to a conviction under 8 USC §924(c)(2) is a drug trafficking offense within the meaning of INA §101(a)(43)(B). When the BIA ceded its' authority to render the INA intelligible for purposes of relief from removal to federal courts which have never spoken to that precise question, any aspect of a uniform standard for classifying offenses was squandered. Despite the recognition that the Board must defer to federal authority in cases arising within the same circuit, only the Second circuit has spoken to the meaning of the term aggravated felony for purposes of removal proceedings. All of the remaining federal decisions upon which the BIA relies are appeals of sentencing enhancements under the USSG. The BIA's authority to interpret the INA, explicated by Congress, remains in full force and effect. In future cases concerning the applicability of the definition of "drug trafficking crime" under federal law to state offenses relating to any controlled substance, the BIA should continue to apply the method of analysis originally enunciated in *Matter of Barrett* and *Matter of Davis.* A state drug offense may be considered an aggravated felony only if it is analogous to an offense, such as possession, sale, or distribution of a controlled substance, that would be punishable under one of the three acts referenced in 18 U.S.C. §924(c)(2). After all, as the majority opinion in *Yanez García, supra,* declares: "To date, no circuit court of appeals has expressed disagreement with this conclusion." 23 I&N Dec. 390, 394.

18

A respondent who has been an LPR for one year and pleads guilty to possession of a controlled substance will not be found to be removable, if he resides within the jurisdiction of the 9th Circuit, pursuant to the decision of the BIA in *Matter of Salazar Regino, supra.* If he resides in the 3rd Circuit, he would be found removable yet eligible for discretionary relief. *See Gerbier v. Holmes,* 280 F. 3d. 297 (3rd Cir. 2002).

The resulting disparity in treatment of first time non-citizen controlled substance offenders violates the principle of equal protection, and will yield some egregiously unfair results. Someone with very little time and few equities in the United States who has been found guilty in the courts of Arizona or California can rely on the ameliorative provisions enacted by the United States Congress in the event that removal proceedings are initiated. A person convicted in Pennsylvania or Delaware would be found removable, yet ultimately eligible for cancellation of removal. Yet another long time LPR, with extensive family ties and considerable property in the United States, is automatically rendered removable with no hope of any relief, even if a formal judgment of guilt is never entered in a state court, because he or she resides in Louisiana, Mississippi, or Texas. Continuation of such a policy towards first time controlled substance offenders violates equal protection, and is fundamentally unfair, both in theory and in its application.

**ISSUE II: The consequences of the denial of equal protection are so severe that they amount to a violation of substantive due process.**

Mr. Aviña became an LPR in 1971. Mr. Aviña's spouse, Francisca de Aviña, is a LPR. Mr. and Mrs. Aviña have been married for fifteen years and have five United States citizen children: Victor Manuel Calzada, age 28, Julio César Calzada, age 26, Miguel

Aviña, age 21, Lizette Xiomara Aviña, age 14, and Kevin Aviña, age 10.  The entire

Aviña family resides in Brownsville, Texas, in a home which Mr. and Mrs. Aviña have

purchased. Mr. Aviña has been a member of the Brownsville, Texas, Church of Christ

since 1988. He was steadily employed in the shrimping industry for many years, and has

worked as a truck driver since 1997.

Mr. Aviña was placed in proceedings and would have been eligible for relief

when proceedings were initiated. *See* Oral Decision of the Immigration Judge at 6-7.

Due to the BIA's decision in *Salazar Regino, supra*, Mr. Aviña will lose his LPR status

as a result of the dates upon which his application for relief was heard on the merits.

Pursuant to the Supreme Court decisions concerning due process for LPR's, and despite

any rulings by circuit courts, this result amounts to a violation of due process. Mr. Aviña

must be automatically deported and is ineligible for any relief, unless he changes venue

to the 2nd, 3rd, 4th, 6th, or 7th circuits, in which case the Attorney General would find him

eligible to request relief.

In *Max George v. Reno,* the Fifth Circuit stated: "Unless a petitioner proves that

his or her claims are within the writ constitutionally protected (a situation which . . . is

unlikely), we must summarily dismiss for lack of jurisdiction." 210 F.3d 556, 557, citing

*Max George v. Reno*, 205 F. 3d 194, 202.  Even upon declining to recognize eligibility

for relief as a fundamental right, (upon which a claim to substantive due process may be

based), the Fifth Circuit "left the door open," to the LPR who can prove that a lengthy

period of lawful residence, when considered in conjunction with significant family ties

and property interests in the United States, is an interest protected by the Fifth

Amendment.

20

In *Alfrache v. Cravener, supra*, a pre-St. Cyr decision, the Fifth Circuit held "that AEDPA § 440(d) prohibits Alfarache's seeking discretionary relief from deportation under INA § 212(c)." 203 F.3d 381, 383. Alfrache also argued that the timing of deportation proceedings violated his right to due process and that he had been denied equal protection because 212(c) relief remained available for non-citizens who had been placed in exclusion proceedings. The Fifth Circuit rejected those claims and noted, "Furthermore, the relief to which Alfarache may have been entitled under INA § 212(c) "was couched in conditional and permissive terms. As a piece of legislative grace, it conveyed no rights, it conferred no status." 203 F.3d 381, 383-84. Nevertheless, despite the Fifth Circuit's reasoning in *Alfrache*, the petitioner asserts that a lengthy period of lawful permanent residence and assimilation to the language and culture of the United States in the case of a person with tangible property interests and profound family ties merits individualized consideration. "The constitutional protection of an alien's person and property is particularly strong in the case of aliens lawfully admitted to permanent residence (LPRs)." *Demore v. Kim* No. 01-1491, (U.S. Sup. Ct. April 29, 2003) at 15.

In *Matthews v. Diaz*, 426 U.S. 67, (1976) three resident alien senior citizens were denied Medicare benefits. 426 U.S. 67, 70. They claimed that the statutory residency requirements for Medicare benefits unconstitutionally discriminated against them. The Supreme Court distilled the issue: "The real question presented by this case is not whether discrimination between citizens and aliens is permissible; rather, it is *whether the statutory discrimination within the class of aliens - allowing benefits to some aliens but not to others - is permissible*." 426 U.S. 67, 81. (emphasis added). Mr. Aviña

respectfully urges this Court that the United States Supreme Court's discussion regarding the scope of constitutional protections afforded to LPR's is useful for the disposition of the equal protection and substantive due process arguments presented in the case at bar.

In *Matthews v. Diaz, supra,* the Supreme Court noted Congress required five years of LPR status to qualify for Medicare benefits, and mentioned that a law will be upheld if it is rationally related to a legitimate interest. "It is unquestionably reasonable for Congress to make an alien's eligibility depend on both the character and the duration of his residence." The Supreme Court stressed that even though some LPR's may be arbitrarily excluded, "those who qualify under the test Congress has chosen may reasonably be presumed to have a greater affinity with the United States than those who do not. In short, citizens and those who are most like citizens qualify. Those who are less like citizens do not." 426 U.S. 67, 83. *Matthews v. Diaz* recognizes the plenary power of Congress over non-citizens, yet also establishes that laws regarding LPR's must be rational, reasonable, and related to an appropriate legislative goal.

The petitioner respectfully urges this Court that even assuming that an opportunity to present evidence of significant equities in the form of lengthy residence and family and property ties does not fall within the category of "fundamental right," the automatic deportation of a long-time LPR who was never incarcerated for his offense does not further a legitimate governmental interest. The effect of the BIA's decision in *Salazar Regino, supra,* does not pass the rational basis test applied in *Matthews v. Diaz, supra.* Because Mr. Aviña would be eligible for relief in jurisdictions outside the Fifth Circuit, denial of an individualized consideration of his equities, including length of residence, family and property ties, service to his adopted country, and rehabilitation is

22

not a reasonable means of regulating LPR's who have come to the attention of state authorities on matters relating to drugs. Even though the petitioner is no demonstrable danger to the community, his LPR status still must be automatically terminated without an opportunity to seek relief, because his deferred adjudication rendered him removable as an aggravated felon, according to the state of immigration law in this jurisidiction. This combination of effects, denominating a deferred adjudication as a conviction, and then finding that the underlying offense is an aggravated felony for which no individual consideration will be afforded, does not appreciably further the goals of the INA. Most importantly, it's application is arbitrary. Given that an LPR who resides in another jurisdiction and identically situated to Mr. Aviña may file an application for relief and be heard on the merits, the ostensible means of protecting the nation, (automatic deportation), is not a logical solution when Mr. Aviña has never been found to be a danger from which society is in need of protection. Even if this court does not recognize eligibility for discretionary relief as a fundamental right worthy of substantive due process, the effect of including Mr. Aviña in the aggravated felony category is not a sound exercise of legislative authority.  Application of the BIA's decision in *Salazar-Regino, supra,* in the Fifth Circuit alone denies Mr. Aviña equal protection. His denial of equal protection results in a denial of substantive due process, in light of his lengthy residence and substantial ties to the United States.

**ISSUE III: Affirmance without opinion was not proper in light of the due process concerns expressed by the Immigration Judge.**

The DHS cites several decisions of circuit courts of appeal upholding the BIA summary affirmance, "streamlining" regulations. *See* Motion to Dismiss at 5. However,

23

even assuming that the "streamlining regulations" are *per se* constitutional, the BIA's failure to meaningfully address or even comment upon the IJ's concerns about a possible denial of due process in Mr. Aviña's case amount to an abuse of the agency's discretion. In short, summary affirmance in this case signifies that the reviewing agency failed to perform it's adjudicative task. The IJ noted:

> ...[I]t is unfortunate that Mr. Aviña, who has been a lawful permanent resident of the United States for over 30 years now finds himself in the position where he is not even eligible to have this Court consider, let alone grant his application for relief. In addition, it is very troubling to this Court that had this case been adjudicated more quickly instead of the four years that it has taken the Court to arrive at this point, Mr. Aviña undoubtedly would have been eligible for relief and very possibly would have, particularly given his length of time in the United States and extensive factors meriting a grant of said relief, had a very strong chance of prevailing on his claim for cancellation of removal. However, neither this Court nor the parties to these proceedings could have in any way predicted how this matter ultimately would be decided and how the law would so drastically change over the course of time that this case has been pending.

> Mr. Aviña has made some very compelling constitutional arguments in his motion to terminate proceedings. The Court is again of the opinion, particularly given the procedural history of this case, that in looking at the question of due process certainly needs to be taken into consideration again, the length of time that this case was pending and the fact that Mr. Aviña actually lost his chance for qualifying for relief for cancellation of removal during the course of these proceedings.

> However, unfortunately, this Court cannot address any constitutional claims made by Mr. Aviña. Rather, such claims must be decided in a different arena. However, the Court does want to make it clear for the record that in its opinion due process certainly would dictate that Mr. Aviña at least be given the opportunity to have his application for cancellation of removal adjudicated by a Court of competent jurisdiction.

Oral Decision of the Immigration Judge at 5-7.

It is well established that the BIA will not rule upon the constitutionality of the statutes it administers. *Matter of U-M-* 20 I&N Dec. 327, (BIA 1991). However, the BIA

may entertain due process and fundamental fairness challenges to procedures as applied. *See Matter of Toro,* 17 I&N Dec. 340 (BIA 1980). Here, the BIA failed to address the IJ's concerns about the length of time the matter was pending, and instead affirmed without opinion. An examination of the record establishes that Mr. Aviña would have been eligible for relief, but for the delay in scheduling this matter for a hearing on the merits. As the agency charged with the administration of the statute which it oversees, the BIA's failure to remedy, or even comment upon this series of events is a failure of the agency to perform it's statutory functions.

## CONCLUSION

WHEREFORE the petitioner prays this Court consider the arguments presented herein, and deny the respondent's motion to dismiss.

Respectfully submitted,

Jodilyn M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Opposition to Respondent's Motion to Dismiss was served upon SAUSA, Lisa Putnam, via First Class Mail to Post Office Box 1711, Harlingen, Texas 78551, on this the 30th day of December, 2003.

Jodi Goodwin